**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AMERANTH, INC.,<br><br>Plaintiff,<br>v.<br><br>DOORDASH, INC.,<br><br>Defendant. | C.A. No.: 2:22-cv-1776-WSH<br>[redacted] |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE, OR ALTERNATIVELY, TO TRANSFER, AND FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ iii

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. LEGAL STANDARD ........ 3

A. Improper Venue ........ 3

B. Failure to State a Claim Upon Which Relief Can be Granted ........ 4

IV. ARGUMENT ........ 5

A. Venue is Improper for DoorDash in the Western District of Pennsylvania ........ 5

1. DoorDash Does Not "Reside" in Pennsylvania ........ 6

2. DoorDash Does Not Have a "Regular and Established Place of Business" in the Western District of Pennsylvania ........ 6

3. If This Court Exercises Its Discretion Not To Dismiss Despite Ameranth's Forum Shopping, This Case Should Be Transferred to the District of Delaware ........ 9

B. Ameranth's Claims Must Be Dismissed Because The Asserted Patent Is Invalid ........ 11

1. Background Of The '130 Patent And Related Invalidated Patents ........ 12

a. *Apple*: The '850, '325, and '733 Patents At The Patent Office And Subsequent Appeal ........ 13

b. *Domino's*: The '077 Patent In The Southern District Of California And Subsequent Appeal. ........ 14

c. *Olo*: The '651 Patent In The District Of Delaware And Subsequent Appeal. ........ 15

d. The '130 Patent Asserted In This Case Is Substantially Similar To The Related Patents Already Found To Be Invalid. ........ 17

2. The Court Should Dismiss The Complaint Because The Asserted Patent Claims Patent Ineligible Subject Matter ........ 21

a. The Asserted Patent's Invalidity Is Confirmed By Two Prior District Court Determinations And Three Federal Circuit Affirmances ........ 21

b. The Asserted Patent Fails The *Alice* Framework........ 23

i. *Alice* Step One: The '130 Patent Is Directed To An Abstract Idea........ 23

ii. *Alice* Step Two: The '130 Patent Does Not Recite Any Inventive Concepts ........ 24

C. Ameranth's Willfulness Claim Must be Dismissed Because DoorDash Did Not Have Pre-Suit Knowledge of the Patent or Alleged Infringement........ 27

1. Courts are Split on Whether Pre-Suit Knowledge is Necessary to Plead Willful Infringement........ 27

2. The Better Approach is to Find that Pre-Suit Knowledge of a Patent and Alleged Infringement is a Prerequisite to a Claim of Willful Infringement........ 28

3. Ameranth Fails to Plead Pre-Suit Knowledge of the '130 Patent........ 29

V. CONCLUSION........ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adidas Am., Inc. v. Skechers USA, Inc.*,
No. 3:16-CV-1400-SI, 2017 WL 2543811 (D. Or. June 12, 2017) ....................29

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014) .................... *passim*

*In re Ameranth Cases*,
No. 11cv1810 DMS (WVG), 2018 WL 11433300 (S.D. Cal. Sept. 25, 2018), *aff'd*, 792 F. App'x 780 (Fed. Cir. 2019) ....................2, 14

*Ameranth Inc. v. Menusoft Sys. Corp.*,
Case No. 2:07-cv-271-CE, Dkt. No. 265 (E.D. Tex. Sept. 21, 2010) ....................13

*Ameranth, Inc. v. Domino's Pizza, LLC*,
792 F. App'x 780 (Fed. Cir. 2019) .................... *passim*

*Ameranth, Inc. v. Olo Inc.*,
No. 2021-1211, 2021 WL 4699180 (Fed. Cir. Oct. 8, 2021) .................... *passim*

*Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*,
6 F.4th 1283 (Fed. Cir. 2021) ....................7

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016) .................... *passim*

*Bayer Healthcare LLC v. Baxalta Inc.*,
989 F.3d 964 (Fed. Cir. 2021) ....................5

*Beteiro, LLC v. BetMGM, LLC*,
626 F. Supp. 3d 789 (D.N.J. 2022) ....................27

*In re Bilski*,
545 F.3d 943 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010) ....................4

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ....................24

*Cooper Lighting, LLC v. Cordelia Lighting, Inc.*,
No. 1:16-CV-2669-MHC, 2017 WL 3469535 (N.D. Ga. Apr. 6, 2017) ....................29

*In re Cordis Corp.*,
769 F.2d 733 (Fed. Cir. 1985) ....................3

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017)........................................................................... *passim*

*Dietz v. Bouldin*,
136 S. Ct. 1885 (2016)..........................................................................................10, 11

*Eko Brands LLC v. Adrian Rivera Maynez Enters.*,
946 F.3d 1376 (Fed. Cir. 2020)..................................................................................5

*Electric Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)................................................................................23

*Ficep Corp. v. Peddinghaus Corp.*,
587 F. Supp. 3d 115 (D. Del. 2022)..........................................................................25

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009).........................................................................................4

*Galderma Labs., L.P. v. Teva Pharms. USA, Inc.*,
290 F. Supp. 3d 599 (N.D. Tex. 2017) .......................................................................9

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020)...............................................................................3, 4

*GreatGigz Sols., LLC v. Maplebear Inc.*,
No. W-20-CV-00737-ADA, 2021 WL 4691145 (W.D. Tex. Oct. 6, 2021).............................9

*Helios Streaming, LLC v. Vudu, Inc.*,
2020 WL 3167641 (D. Del. June 15, 2020)..................................................................28

*iFIT Inc. v. Peloton Interactive, Inc.*,
No. CV 21-507, 2022 WL 609605 (D. Del. Jan. 28, 2022).............................................29

*Infinity Comput. Prod., Inc. v. OKI Data Americas, Inc.*,
No. CV 12-6797, 2018 WL 1035793 (E.D. Pa. Feb. 23, 2018).........................................8

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
200 F. Supp. 3d 565 (W.D. Pa. 2016)...................................................................4, 23

*Lafferty v. St. Riel*,
495 F.3d 72 (3d Cir. 2007)...........................................................................................9

*M&C Innovations, LLC v. Igloo Prods. Corp.*,
2018 WL 4620713 (S. D. Tex. July 31, 2018)...............................................................28

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016)................................................................................22

*MG Freesites Ltd. v. ScorpCast LLC*,
No. 20-1012-MFK, 2023 WL 346301 (D. Del. Jan. 20, 2023) ....................27

*In re Micron Tech.*,
875 F.3d 1091 (Fed. Cir. 2017)....................10

*Natera, Inc. v. ArcherDX, Inc.*,
No. 20-125-LPS, 2020 WL 6043929 (D. Del. Oct. 13, 2020).................... *passim*

*Ravgen, Inc. v. Quest Diagnostics Inc.*,
No. 2:21-cv-09011-RGK-GJS, 2022 WL 2047613 (C.D. Cal. Jan. 18, 2022) ....................28

*Simio, LLC v. FlexSim Software Prod.*
983 F.3d 1353 (Fed. Cir. 2020)....................27

*Sonos, Inc. v. Google LLC*,
591 F. Supp. 3d 638 (N.D. Cal. 2022), *leave to appeal denied*, No. 2022-134, 2022 WL 1486359 (Fed. Cir. May 11, 2022) ....................28, 29

*Talsk Rsch. Inc. v. Evernote Corp.*,
No. 16-cv-2167, 2017 WL 4269004 (N.D. Ill. Sept. 26, 2017)....................9

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
137 S. Ct. 1514 (2017)....................1, 3, 6

*In re TLI Comms. LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016)....................24

*VLSI Tech. LLC v. Intel Corp.*,
CV No. 18-966-CFC, 2019 WL 1349468 (D. Del. Mar. 26, 2019)....................27

*WBIP, LLC v. Kohler Co.*,
829 F.3d 1317 (Fed. Cir. 2016)....................30

*Westech Aerosol Corp. v. 3M Co.*,
927 F.3d 1378 (Fed. Cir. 2019)....................3

*Wrinkl, Inc. v. Facebook, Inc.*,
No. 20-cv-1345-RGA, 2021 WL 4477022 (D. Del. Sept. 30, 2021)....................28, 29

*Xodus Med., Inc. v. Allen Med. Sys., Inc.*,
No. 2:17-CV-00581, 2018 WL 2338763 (W.D. Pa. May 22, 2018) ....................8

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
528 F. Supp. 3d 247 (D. Del. 2021)....................5, 27, 28

**Statutes**

28 U.S.C. § 1391(c) ....................8

28 U.S.C. § 1400(b) .................... *passim*

28 U.S.C. § 1406(a) ....................9, 10

35 U.S.C. § 101 .................... *passim*

35 U.S.C. § 102 ....................12

35 U.S.C. § 120 ....................12

Defendant DoorDash, Inc., ("DoorDash") respectfully moves this Court for an Order dismissing this case for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), or alternatively, to transfer the case to the District of Delaware where venue is proper, and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## I. INTRODUCTION

***First***, this Court should dismiss this case because venue is improper against DoorDash under 28 U.S.C. § 1400(b)—the exclusive venue statute for patent infringement cases. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017). Section 1400(b) provides that a patent infringement case may be brought in the judicial district where (1) "the defendant resides," or (2) "has committed acts of infringement ***and*** has a regular and established place of business." (emphasis added). Here, DoorDash does not "reside" in, nor does it maintain a "regular and established place of business," in this District.[1] While Plaintiff Ameranth, Inc. ("Ameranth") seeks to circumvent an appropriate forum for this dispute, no doubt because of its track record of unsuccessful litigation outside this District, it has not and cannot make a showing to establish venue in this District. In the alternative to dismissal, this Court should transfer the case to the District of Delaware, a judicial district where venue is proper.

***Second***, even if the Court decides venue is proper in this case, the Court should dismiss this case because Ameranth fails to plead a claim upon which relief can be granted, as the asserted patent is invalid under 35 U.S.C. § 101. Like ***five*** other related patents that have already been invalidated under Section 101, the asserted patent in this case claims an abstract idea that lacks any inventive concept sufficient to render the patent claims eligible for patenting.

***Third***, the Court should dismiss Ameranth's willful infringement claim, as it relies solely

[1] To be clear, DoorDash denies committing any acts of infringement in this District or elsewhere.

on DoorDash's knowledge of the asserted patent and alleged infringement from Ameranth's complaint. Such knowledge should not be sufficient to impute willful infringement upon DoorDash.

## II. BACKGROUND

Plaintiff Ameranth, a Delaware corporation having a principal place of business in San Diego, California, filed its Complaint on December 9, 2022. (Dkt. 1.) At issue is a single patent, U.S. Patent No. 11,276,130 (the "'130 patent"). The '130 patent, however, is part of a larger family of related patents and applications. (Dkt. 1-1 at 2.) Notably, districts courts for the Southern District of California and the District of Delaware have already determined that other members of this patent family are invalid under 35 U.S.C. § 101 for claiming patent ineligible subject matter—decisions which were appealed by Ameranth and subsequently affirmed by the Federal Circuit Court of Appeals. *See In re Ameranth Cases*, No. 11cv1810 DMS (WVG), 2018 WL 11433300 (S.D. Cal. Sept. 25, 2018), *aff'd*, 792 F. App'x 780, 787 (Fed. Cir. 2019); *Natera, Inc. v. ArcherDX, Inc.*, No. 20-125-LPS, 2020 WL 6043929 (D. Del. Oct. 13, 2020), *aff'd without opinion*, No. 2021-1211, 2021 WL 4699180 (Fed. Cir. Oct. 8, 2021), *cert. denied sub nom. Ameranth, Inc. v. Olo, Inc.*, 213 L. Ed. 2d 1039, 142 S. Ct. 2814 (2022).

Defendant DoorDash is a Delaware corporation with its headquarters in San Francisco, California. DoorDash has no offices in this District and does not own or lease any property in this District. Ameranth tellingly did not file this matter in Delaware, or in the Southern District of California, where it has received unfavorable decisions in related lawsuits, but instead brings this matter here. On March 24, 2023, the parties met and conferred regarding DoorDash's motions pursuant to Federal Rule of Civil Procedure 12(b). (Dkt. 12 and 13.) In light of arguments that DoorDash raised, Ameranth subsequently sought and was granted leave to amend its Complaint. Ameranth filed a First Amended Complaint on May 5, 2023. (Dkt. 14 ("FAC").)

## III. LEGAL STANDARD

### A. Improper Venue

Venue in patent infringement actions is governed exclusively under 28 U.S.C. § 1400(b). *TC Heartland*, 137 S. Ct. at 1519–21. "Any civil action for patent infringement may be brought in the judicial district where [1] the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). It is well established that "[t]he requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interests of some overriding policy, is to be given a liberal construction." *In re Cray Inc.,* 871 F.3d 1355, 1360 (Fed. Cir. 2017) (quoting *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961)); *see also In re Google LLC*, 949 F.3d 1338, 1346 (Fed. Cir. 2020) ("[T]he Supreme Court has cautioned against a broad reading of the venue statute."). In patent cases, "the plaintiff has the burden of establishing proper venue under 28 U.S.C. § 1400(b)." *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1381–82 (Fed. Cir. 2019).

Regarding the first prong of the venue test, "for purposes of § 1400(b), a domestic corporation 'resides' only in its State of incorporation." *TC Heartland*, 137 S. Ct. at 1517, 1520–21. Personal jurisdiction alone cannot establish residence for purposes of §1400(b). *See id.*

Regarding the second prong of the venue test, "a corporate defendant has a regular and established place of business in a district … [if] the corporate defendant does its business in that district through a permanent and continuous presence [in that district]." *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985). "[T]he regular and established place of business standard requires more than the minimum contacts necessary for establishing personal jurisdiction or for satisfying the doing business standard of the general venue provision." *In re Cray,* 871 F.3d at 1361. Rather, this standard has three requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *Id.*

at 1360. "If any statutory requirement is not satisfied, venue is improper under § 1400(b)." *Id.*

With respect to the first requirement under *Cray*, "[w]hile the 'place' need not be a 'fixed physical presence in the sense of a formal office or store,' there must still be a physical, geographical location in the district from which the business of the defendant is carried out." *Id.* at 1362. (citation omitted). With respect to the second *Cray* requirement, "[a] business may be 'regular,' for example, if it operates in a 'steady[,] uniform[,] orderly [, and] methodical' manner." *Id.* (citation omitted). This prong also requires the "regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.' *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020). Finally, Cray's third requirement is that the place of business must be "the place of the defendant," and not merely "a place of the defendant's employee" or a place of an independent contractor. *In re Cray,* 871 F.3d at 1363. "Relevant considerations include," among other things, "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place." *Id.*

**B. Failure to State a Claim Upon Which Relief Can be Granted**

A complaint must allege facts "sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A "'plausible claim for relief' in a patent infringement case necessarily requires a valid patent; otherwise there can be no infringement." *Intellectual Ventures I LLC v. Erie Indem. Co.*, 200 F. Supp. 3d 565, 569 (W.D. Pa. 2016). "[T]he 12(b)(6) stage is a proper one at which to examine patent eligibility under § 101." *Id.*

Patent Ineligibility

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). The Supreme Court in *Alice* provided a two-step framework to analyze whether a patent

claim captures patent-eligible subject matter under 35 U.S.C. § 101. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014) ("*Alice*"). At *Alice* Step One, the court must "determine whether the claims at issue are directed to … patent-ineligible concepts." *Id*. at 217. If this standard is met, then the court proceeds to Step Two, wherein the court must ask "[w]hat else is there in the claims." *Id*. This inquiry requires consideration of "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application.'" *Id*. (citing *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 78–79 (2012)). In the second step of the analysis, the court must "search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217-18 (citing *Mayo*, 566 U.S. at 72–73).

Willful Infringement

To establish willful patent infringement, the patent owner must prove knowledge of the patent and knowledge of infringement. "To establish willfulness, the patentee must show the accused infringer had a specific intent to infringe at the time of the challenged conduct." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987–88 (Fed. Cir. 2021); *see also Eko Brands LLC v. Adrian Rivera Maynez Enters.*, 946 F.3d 1376, 1378 (Fed. Cir. 2020) ("deliberate or intentional infringement"). Courts are divided over whether a defendant must have pre-suit knowledge to sustain a claim of willful infringement. *See ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 249–50 n.1 (D. Del. 2021) (collecting cases).

## IV. ARGUMENT

### A. Venue is Improper for DoorDash in the Western District of Pennsylvania

This Court should dismiss this case under Fed. R. Civ. P. 12(b)(3) because Ameranth cannot satisfy either prong of § 1400(b) for DoorDash. In the alternative, this Court should transfer

the case to the District of Delaware, where venue is proper.

### 1. DoorDash Does Not "Reside" in Pennsylvania

There is no dispute that DoorDash is a publicly traded corporation organized and existing under the laws of the State of Delaware. (FAC at ¶ 2; Ex. 1, Declaration of Kelsey Merrigan ("Merrigan Dec."), ¶ 3.) Accordingly, pursuant to *TC Heartland*, DoorDash does not "reside" in Pennsylvania for purposes of venue under 28 U.S.C. § 1400(b). *See TC Heartland*, 137 S. Ct. at 1517. Venue in this District therefore is improper based on the first prong of 28 U.S.C. §1400(b).

### 2. DoorDash Does Not Have a "Regular and Established Place of Business" in the Western District of Pennsylvania

Venue also fails in this District under the second prong of 28 U.S.C. §1400(b) because DoorDash does not have any "regular and established place of business" in this District that meets each *Cray* requirement.

For starters, DoorDash does not have any "physical place" of business in this District, much less one that is "regular and established." *See In re Cray*, 871 F.3d at 1360. Indeed, DoorDash does not own or lease any real property in this District. (Merrigan Dec., ¶ 5.) DoorDash does not maintain any offices, research, development or manufacturing facilities in this District. (*Id.* ¶ 6.) DoorDash does not operate any distribution centers or maintain any inventory in this District. *Id.* Thus, venue is not proper in this District against DoorDash. *See In re Cray*, 871 F.3d at 1362 ("[T]here must still be a physical, geographical location in the district from which the business of the defendant is carried out.").

In its First Amended Complaint, Ameranth pleads the existence of a DashMart convenience store located in Pittsburgh, Pennsylvania. (FAC ¶ 2.) This DashMart store, however, is not a place "of the defendant [DoorDash]." *See In re Cray*, 871 F.3d at 1363 ("'[T]he regular and established place of business' must be 'the place of the defendant.'"). DashMart store locations [redacted]

[redacted] a wholly-owned indirect subsidiary of DoorDash, DoorDash Essentials LLC ("DoorDash Essentials"), not DoorDash. (Merrigan Dec., ¶¶ 9-10.) [redacted] Simply put, DoorDash does not control any of the DashMart stores. *In re Cray*, 871 F.3d at 1363.

[redacted] As noted above, DoorDash Essentials is wholly-owned indirect subsidiary of DoorDash that is formed in the State of Delaware. (*Id.* at ¶ 9.) [redacted] As a result, any presence of DoorDash Essentials in this District cannot be imputed to its parent DoorDash since they maintain formal corporate separateness. *See Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1289

[redacted] Ameranth points to one such instance in its First Amended Complaint in connection with a purported job posting by DoorDash for a Site Manager for the DashMart facility in Pittsburgh, PA. (FAC ¶ 7.) [redacted]

(Fed. Cir. 2021) ("But where related companies have maintained corporate separateness, the place of business of one corporation is not imputed to the other for [patent] venue purposes.").

District courts have applied these principles consistently when refusing to impute a subsidiary's presence to its parent for patent venue purposes. *See Xodus Med., Inc. v. Allen Med. Sys., Inc.*, No. 2:17-CV-00581, 2018 WL 2338763, at *3 (W.D. Pa. May 22, 2018) ("Plaintiff has not demonstrated that the existing and formal corporate distinctions between the Defendant and its parent should be disregarded here for compelling equitable reasons so as to permit the Hill-Rom facility in Monroeville be treated as a 'physical presence' of its subsidiary, the Defendant."); *see also Infinity Comput. Prod., Inc. v. OKI Data Americas, Inc.*, No. CV 12-6797, 2018 WL 1035793, at *9 (E.D. Pa. Feb. 23, 2018) ("Though CSA is Defendant Canon's subsidiary, CSA's presence within this district is not enough to render venue proper as to Defendant Canon."). As a result, Ameranth cannot meet its burden to show that DoorDash Inc. maintains "a regular and established place of business" based on the presence of DashMart stores in this District.

Moreover, Ameranth's allegations regarding purported acts of infringement in this District fail to establish that DoorDash has a "regular and established place of business" here. *See In re Cray Inc.*, 871 F.3d at 1360-61 ("[T]he regular and established place of business standard requires more than the minimum contacts necessary for establishing personal jurisdiction or for satisfying the doing business standard of the general venue provision, 28 U.S.C. § 1391(c)." (citation omitted)). For example, Ameranth alleges that DoorDash employs a Pittsburgh, Pennsylvania-based engineering team that supports and works on products and services accused of infringement, including use of DoorDash's mobile application in this District. (FAC ¶¶ 6 and 8-11.) DoorDash, however, does not maintain an engineering office in Pittsburgh. (Merrigan Dec., ¶¶ 5-6.) Rather, any DoorDash engineers located in the District ***work remotely*** from home. (*Id.* ¶ 7.) This is not

sufficient to infer that DoorDash has a "regular and established place of business" in this District. *See, e.g., Galderma Labs., L.P. v. Teva Pharms. USA, Inc.*, 290 F. Supp. 3d 599, 610 (N.D. Tex. 2017) ("The third requirement—that "the regular and established place of business" must be "the place of the defendant"—means that it cannot be solely a place of the defendant's employee, such as an employee's home, if that employee works from home.") (citing *In re Cray*, 871 F.3d at 1360); *see also GreatGigz Sols., LLC v. Maplebear Inc.*, No. W-20-CV-00737-ADA, 2021 WL 4691145, at *2 (W.D. Tex. Oct. 6, 2021) (dismissing for improper venue because defendant "does not conduct business out of its employees' homes, nor are the employee's homes places of Instacart.")).

Similarly, Ameranth's allegations that delivery "Dashers" operate and use the accused products and services within this District cannot establish that DoorDash has a "regular and established place of business" in the district. (FAC ¶¶ 5, 11.) Contrary to Ameranth's assertions, delivery "Dashers" are not employed by DoorDash. Rather, DoorDash onboards Dashers as ***independent contractors*** for the provision of contracted services through the DoorDash online delivery platform. (Merrigan Dec., ¶ 8.) *See, e.g., Talsk Rsch. Inc. v. Evernote Corp.*, No. 16-cv-2167, 2017 WL 4269004 at *5 (N.D. Ill. Sept. 26, 2017) (finding no defendant presence through non-employee independent contractors, and noting that "relying on customer use of Defendant's [product] within the district as a substitute for a fixed physical location would not be proper.").

Thus, DoorDash has no regular and established place of business physically located in this District for purposes of § 1400(b). Accordingly, patent venue in this District is also not proper against DoorDash under the second prong of the patent venue statute.

**3. If This Court Exercises Its Discretion Not To Dismiss Despite Ameranth's Forum Shopping, This Case Should Be Transferred to the District of Delaware**

Where a plaintiff files suit in an improper forum under 28 U.S.C. § 1406(a), "district courts

are required either to dismiss or transfer to a proper forum." *Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465–66 (1962)). In such a case, transfer may be made to "any district or division in which [the case] could have been brought." 28 U.S.C. § 1406(a). As noted above, venue in a patent infringement action is governed solely and exclusively by 28 U.S.C. § 1400(b).

Here, DoorDash is organized and exists under the laws of the State of Delaware. (Merrigan Dec., ¶ 3.). The District of Delaware is the sole judicial district in the State of Delaware. Consequently, as DoorDash "resides" in Delaware, there can be no dispute that proper venue for this action would be in the District of Delaware, should the Court exercise its discretion to transfer.

According to the Federal Circuit, a district court may assess whether transfer of a patent infringement action is appropriate in view of the framework applied by *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016). *See In re Micron Tech.*, 875 F.3d 1091, 1099–1100 (Fed. Cir. 2017). In particular, under the *Dietz* framework, the Court must consider: (1) whether "the exercise of [the Court's] inherent power" is "a 'reasonable response to the problems and needs' confronting the court's fair administration of justice"; and (2) whether "the exercise of an inherent power" is "contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Id*. at 1104 (quoting *Dietz*, 136 S. Ct. at 1892 (internal citations omitted)). While the Federal Circuit declined to outline the specific considerations under *Dietz* that apply in the context of a motion to transfer, the court noted that "timeliness" is a factor, and in particular, "how near is the trial, which may implicate efficiency or other interests of the judicial system and of other participants in the case." *Id*. at 1109.

Here, there are no such concerns. The case was filed just months ago and remains in its infancy. A case schedule has not yet issued, and no discovery requests have been served by either

party. Therefore, transfer of this action to the appropriate venue would be both proper and in the interests of justice, as it would not result in any undue delay or prejudice to either party. Furthermore, transfer of this action is not contrary to any express grant of or limitation on the district court's power contained in a rule or statute. Thus, transfer of this would be proper under the *Dietz* framework should the Court decide to exercise its discretion.

### B. Ameranth's Claims Must Be Dismissed Because The Asserted Patent Is Invalid

Even if the Court determines venue is proper, the Court should dismiss with prejudice Ameranth's Amended Complaint for infringement of the '130 patent pursuant to Federal Rule of Civil Procedure 12(b)(6). The asserted claims of the '130 patent attempt to monopolize patent ineligible subject matter, and as a result, are invalid as a matter of law under 35 U.S.C. § 101.

The invalidity of the asserted claims in this case is confirmed by the same reasoning expressed in ***three*** Federal Circuit decisions affirming the patent ineligibility of ***five*** related Ameranth patents that share the same or overlapping specifications. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016); *Ameranth, Inc. v. Domino's Pizza, LLC*, 792 F. App'x 780 (Fed. Cir. 2019); *Ameranth, Inc. v. Olo Inc.*, No. 2021-1211, 2021 WL 4699180 (Fed. Cir. Oct. 8, 2021). The '130 patent, like the related patents the Federal Circuit confirmed were invalid under § 101, relates to an information management and synchronous communications system for hospitality information. Specifically, the asserted claims of the '130 patent are directed to communicating hospitality-related information using a system that is capable of synchronous communications and messaging. The claims, however, merely automate the traditional pen-and-paper practice of food/drink ordering using result-oriented and functional language, without describing any specific programming steps or improvements to computer functionality.

Further, just like the invalidated claims of the related patents, the asserted claims here recite only well-known, conventional, and routine hardware and software components such as a "web

server," a "master database," "software," and various "APIs" (*i.e.*, application program interfaces). Indeed, the specification of the '130 patent concedes that the information management and synchronous communications system uses "typical hardware elements" and the programming steps for implementing "the functions falling within the described invention" in software are "commonly known." (Dkt. 1-1 at Col. 13:7-12).

### 1. Background Of The '130 Patent And Related Invalidated Patents

Although this case is the first time that Ameranth has asserted the '130 patent in litigation, the '130 patent is part of a larger family of earlier filed patents that Ameranth has attempted to litigate since 2007. In particular, the '130 patent issued from a chain of continuation applications that use the same specification, including the application that issued as U.S. Patent No. 9,747,651 ("the '651 patent") invalidated in *Olo*. Moreover, whereas the '130 patent only claims the benefit of the chain of continuation applications ending with U.S. Patent No. 9,009,060, the other applications in the chain claim priority through a chain of continuation-in-part applications that have overlapping specifications, notably U.S. Patent No. 8,146,077 ("the '077 patent") invalidated in *Domino's* and U.S. Patent Nos. 6,982,733 ("the '733 patent"), 6,871,325 ("the '325 patent")[3], and 6,384,850 ("the '850 patent") invalidated in *Apple*.[4]

[3]The '325 patent (not shown) is a continuation of the earliest filed '850 patent.

[4]Since the '130 patent does not claim priority beyond the chain of continuation applications starting with the '060 patent, the effective filing date of the '130 patent is the filing date of the '060 patent or July 26, 2005. *See* 35 U.S.C. § 120. As a result, Ameranth's earlier patents, including the '733 patent, the '325 patent, and the '850 patent which issued more than one year prior to July 26, 2005, are prior art against the '130 patent. *See* 35 U.S.C. § 102.




As explained below, several courts have already determined these related patents were invalid under 35 U.S.C. § 101 for claiming patent ineligible subject matter—decisions which were appealed by Ameranth and subsequently affirmed by the Federal Circuit Court of Appeals. The ’130 patent is scarcely distinguishable from those related patents and thus similarly should be found invalid.

**a. *Apple*: The ’850, ’325, and ’733 Patents At The Patent Office And Subsequent Appeal**

The trilogy begins with *Apple*. In the 2011-2012 timeframe, Ameranth began filing a slew of patent infringement cases in the United States District Court for the Southern District of California asserting the ’850, ’325 and ’077 patents and subsequently the ’733 patent as well.[5] In October 2013, Apple along with several of defendants sought review of the ’850, ’325 and ’733 patents under the Transitional Program for Covered Business Method (“CBM”) Patents. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1234 (Fed. Cir. 2016) (“*Apple*”). The Patent Trial and Appeal Board (“PTAB”) found most of the challenged claims unpatentable under 35 U.S.C. § 101, except for some dependent claims that involved “linking orders to specific customers” or

[5]Ameranth had earlier sued *Menusoft* for infringement of the ’850, ‘325 and ’733 patents in 2007 in a case filed in the United States District Court for the Eastern District of Texas. The jury in that case returned a verdict of no infringement and invalidity for all asserted claims. *Ameranth Inc. v. Menusoft Sys. Corp.*, Case No. 2:07-cv-271-CE, Dkt. No. 265 (E.D. Tex. Sept. 21, 2010). Thereafter, the parties in the *Menusoft* case reached a settlement and asked the court to vacate the invalidity verdicts and judgment.

"handwriting and voice capture technologies." *Id.* at 1235–36, 1243–45.

On appeal, the Federal Circuit affirmed the PTAB's decisions of unpatentability and reversed, without any remand, the PTAB's decisions that the remaining claim were patentable—ultimately, ***no claims survived***. *Id.* at 1245. In particular, the Federal Circuit first determined at *Alice* Step One that the challenged claims were directed to an abstract idea, namely the "ability to generate menus with certain features" but without more:

> The patents claim systems including menus with particular features. They do not claim a particular way of programming or designing the software to create menus that have these features, but instead merely claim the resulting systems. . . . Alternatively, the claims are not directed to a specific improvement in the way computers operate.

*Id.* at 1241. The Federal Circuit therefore proceeded to *Alice* Step Two, but only to find that the claims lacked any transformative elements. *Id.* at 1242, 1244-45. With regard to the claims the PTAB found unpatentable, the Federal Circuit affirmed that "[t]he patents can readily be understood as adding conventional computer components to well-known business practices." *Id.* at 1242. As for the dependent claims that the PTAB found patentable, the Federal Circuit reversed finding that limitations directed to "linking orders to specific customers" and use of "handwriting or voice capture" technologies cannot be rendered patentable merely by performing them with a computer. *Id.* at 1244–45.

**b. *Domino's*: The '077 Patent In The Southern District Of California And Subsequent Appeal.**

The saga continues with *Domino's*. Following the decision in *Apple*, litigation resumed in in the Southern District of California, including against Domino's Pizza, LLC and Domino's Pizza, Inc., for infringement of the '077 patent. Not long after, however, the district court granted summary judgment of unpatentability of the '077 patent. *See In re Ameranth Cases*, No. 11cv1810 DMS (WVG), 2018 WL 11433300 (S.D. Cal. Sep. 25, 2018). Ameranth appealed on this occasion as well, but the Federal Circuit affirmed the district court's findings. *See Ameranth, Inc. v.*

*Domino's Pizza, LLC*, 792 F. App'x 780 (Fed. Cir. 2019). Thereafter, Ameranth filed a petition for writ of certiorari with the United States Supreme Court, which was denied. *See Ameranth, Inc. v. Domino's Pizza, LLC*, 141 S.Ct. 249 (2020).

At the outset, the Federal Circuit explained that although the claims of '077 patent on communications systems for generating and transmitting menus differed from the claims in *Apple*, they suffered from the same ineligibility defects. *Ameranth, Inc. v. Domino's Pizza, LLC*, 792 F. App'x 780, 782, 786 (Fed. Cir. 2019). Specifically, at *Alice* Step One, the Federal Circuit determined that the concept of "synchronous communications and automatic formatting for different handheld devices" recited in the '077 patent claims is an abstract idea because the claims "do not contain specifics of 'a particular conception of how to carry out that concept'." *Id.* at 786 (citations omitted). At *Alice* Step Two, the Federal Circuit found that the claims fail to disclose an inventive concept because the specification of the '077 patent "acknowledges that the 'functions falling within the described invention' can be based on 'commonly known' programming steps, Ex. 2, '077 patent, 12:57–61, and the claim limitations describe a desired result but do not instruct how to accomplish that result." *Id.*

**c. *Olo*: The '651 Patent In The District Of Delaware And Subsequent Appeal.**

Undeterred by its losses in *Apple* and *Domino's*, Ameranth filed a new patent infringement suit in 2020 asserting the '651 patent against Olo, Inc. in the United States District Court for the District of Delaware. Olo moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6) for invalidity under 35 U.S.C. § 101. Judge Stark, relying on the Federal Circuit's decisions in *Apple* and *Domino's*, found the '651 Patent unpatentable under § 101, and dismissed the case. *See Natera, Inc. v. ArcherDX, Inc.*, No. 20-125-LPS, 2020 WL 6043929, at *7-10 (D. Del. Oct. 13, 2020) (joint opinion with two other unrelated cases).

Again, starting at *Alice* Step One, the court held the '651 patent claims are directed to the

abstract idea of "communicating hospitality-related information using a system that is capable of synchronous communications and messaging." *Id.* at *7 (internal quotation marks omitted). In doing so, the court noted that "[l]ike the claims at issue in [*Apple* and *Domino's*], the claims here provide only results[-] focused and functional language without providing any specifics as to how to carry out the desired goal." *Id.* This is because "just like the related patents that were already invalidated, neither the claims, nor the specification describe[s] any specific programming steps for the IAA [or intelligent automated assistant] system or the free format messaging, nor do they claim an improvement to computer functionality." *Id.* at *8. As a result, the court found that at Step One the claims recite abstract ideas because they are not "directed to an improvement to computer functionality but instead automate pen-and-paper traditional business practice, specifically the practices of ordering and making reservations." *Id.*

Similarly, at *Alice* Step Two, the court found that the addition of conventional hardware and software elements as described in the specification does not provide an inventive concept. *Id.* at *9. In fact, the court noted that "[t]he best comparisons here again are between the '651 patent and the claims from the related patents that were found ineligible for patenting in *Apple* and *Domino's*, cases in which the Circuit called out that the specification 'expressly recited that the hardware needed was typical and that the programming steps were commonly known,' and that the patent provided no disclosure of how the invention would be technologically implemented." *Id.*

Once again dissatisfied and unconvinced, Ameranth appealed the Delaware court's decision. And yet again, the Federal Circuit affirmed the court's determination—this time through a summary affirmance pursuant to Rule 36, and without any accompanying opinion. *See Ameranth, Inc. v. Olo Inc.*, No. 2021-1211, 2021 WL 4699180 (Fed. Cir. Oct. 8, 2021). Ameranth further

attempted to appeal to the Supreme Court, but certiorari was denied. *See Ameranth, Inc. v. Olo, Inc.*, 142 S. Ct. 2814 (2022).

**d. The '130 Patent Asserted In This Case Is Substantially Similar To The Related Patents Already Found To Be Invalid.**

As noted above, the '130 patent and the '651 patent invalidated in *Olo* have identical specifications. Moreover, this common specification is largely the same as the specifications of the '077 patent invalidated in *Domino's* and the '733 patent, the '325 patent, and the '850 patent invalidated in *Apple*.

To begin with, the Background of the Invention for all these related patents describes conventional prior art pen-and-paper techniques for restaurant ordering and reservations and waitlist management. (*See, e.g.,* Dkt. 1-1 at Col. 1:31-39, Col. 2:45-48.) These patents purport to improve on prior attempts to computerize these functions by providing an "information management and synchronous communications system" where hospitality-related information can be communicated among different system components, such as "from the operator as well as to and from another computer, Web page menu, remote digital device using a standard hardwired connection, the internet or a wireless link." (*Id.* at Col. 2:61-3:17.) Figures 1-9 and their descriptions describe one such system. Specifically, Figure 9 includes various boxes that merely identify functional results. (*Id.* at Fig. 9.) Depicted in the center of Figure 9, the "Communications Controller" is referenced in the specification as a "communications control program monitors and routes all communications to the appropriate devices." (*Id.* at Col. 10:48-49.)

The specification for the '130 patent and the invalidated '651 patent also includes additional content that was not found in the earlier invalidated patents, including messaging and text-to-voice functionality involving communications with landline telephones, cellular telephones, and wireless devices in appointment, waitlist, and/or reservation operations. (*Id.* at

Col. 13:2-6, Col. 13:31-18:54, Fig. 10.) This content, however, does not disclose any new inventive technology. Indeed, the inclusion of messaging features for a system that are merely described in high level, functional terms, such as the "conversion" of text-to-voice fails to describe any new "conversion" technology. (*See, e.g., Id.* at Col. 13:2-6, Col. 14:29-53, Col. 15:10-43.) Figure 10, which is mostly identical to the original Figure 9, reflects the result-oriented functional nature of this concept, including the simple addition of two circles labeled "Communication Conversions," which are highlighted in red below.



(*Id*. at Fig. 10) (emphasis added). Explaining that a computer might serve as an "automated reservations assistant" to communicate with a user without further technical information cannot save the day. *Id.* at Col. 14:61-15:48.

Notably, the court rejected Ameranth's attempt to distinguish the Federal Circuit's

decisions in *Apple* and *Domino's* on the basis that the '651 patent added new subject matter not disclosed in the earlier filed patents art issue in those cases:

> Ameranth tries but fails to distinguish the earlier Federal Circuit cases, *Apple* and *Domino's*[,] by pointing to the addition[s] in the specification. Specifically, the addition of Figure 10 which itself points to communication conversion, and by further pointing to text relating to Figure 10 which has been added to the specification, such as in column 18. ***But Figure 10 [ and] the new text of the specification about it do not in my view change the Section 101 outcome. The new material is just more high level results[-]focused ideas***.
>
> *Natera, Inc. v. ArcherDX, Inc.*, No. 20-125-LPS, 2020 WL 6043929, at *8 (D. Del. Oct. 13, 2020) (emphasis added).

Critically, the '130 patent specification repeats verbatim the same key admissions that the Federal Circuit relied upon in holding invalid the five related patents. Using only conventional "typical hardware elements," the specification does not describe an inventive device:

> The preferred embodiment of the present invention uses *typical hardware elements* in the form of a computer workstation, operating system and application software elements which configure the hardware elements for operation in accordance with the present invention. A *typical workstation platform* includes hardware such as a central processing unit ("CPU"), e.g., a Pentium® microprocessor, RAM, ROM, hard drive storage in which are stored various system and application programs and data used within the workstation, modem, display screen, keyboard, mouse and optional removable storage devices such as floppy drive or a CD ROM drive. The workstation hardware is configured by software including an operating system, e.g., Windows® 95, 98, NT or CE, networking software (including internet browsing software) and application software components. The preferred embodiment also encompasses a *typical file server platform* including hardware such as a CPU, e.g., Pentium® microprocessor, RAM, ROM, hard drive, modem, and optional removable storage devices, e.g., floppy or CD ROM drive. The server hardware is configured by software including an operating system, e.g., Windows® 95, 98, NT or CE, networking software (including Web server software) and database software.

(Dkt. 1-1 at Col. 6:57-7:12 (emphasis added).) Nor does the '130 patent describe any inventive software. The patent states: "The software applications for performing the functions falling within the described invention can be written in any commonly used computer language. The discrete programming steps are commonly known and thus programming details are not necessary to a full description of the invention." (*Id*. at Col. 13:7-12.)

The claims do not save the specification, as they likewise fail to recite any inventive

hardware or software. Instead, the asserted claims of the '130 patent recite only the same type of purely functional, result-oriented language as the five invalid related patents.

The '130 patent has only one independent claim and two dependent claims. Claim 1 is reproduced in full below (Dkt. 1-1 at 21:38-22:3):

> 1. An intelligent web server computer with multi-modes of contact, multi communications protocols, multi-user and parallel operational capabilities for use in completing remotely initiated hospitality food/drink delivery or pick up ordering tasks comprising;
> **[a]** at least one said web server computer with web server software;
> **[b]** at least one hospitality food/drink ordering software application for delivery or pick up orders integrated with the at least one said web server computer;
> **[c]** an advanced master database comprising data and parameters of the at least one hospitality food/drink ordering software application integrated with the at least one said web server computer and with a usable menu file structure dictated prior to task execution and is accessible via its own database API and with one or more predefined formats stored within it and which intelligently learns, updates and stores multiple communication modes of contact and related operational parameters for hospitality entities and for remote hospitality users along with their prior attributes or preferences, if any and then intelligently applies them;
> **[d]** Middleware/Framework Communications Control Software (MFCCS) which enables via its centralized system layer architecture the at least one said web server computer to communicate with two or more remote wireless handheld computers and for multiple modes of contact, multiple communications protocol functionality, integrated with the master database and with the at least one hospitality food/drink ordering software application;
> **[e]** at least one external software API, which enables the full integration of the at least one hospitality food/drink ordering software application and the MFCCS with one or more non hospitality applications via the internet;
> **[f]** the external software API integrating with and leveraging the advanced master database to enable the importing of food/drink menus including required and non-required modifiers which are then automatically reflected throughout the master menu tree file structure, improving efficiency while eliminating the necessity of continually querying or checking every tree branch in the master menu tree file structure when responding to remote user requested tasks and/or other inputs;
> **[g]** wherein the at least one said web server computer is integrated with the MFCCS, the hospitality food/drink ordering software and is programmed with instructions enabled to intelligently choose and apply multiple and different modes of contact and/or different communications protocols, if applicable with the said hospitality entities and/or said remote users associated with the user requested hospitality food/drink delivery or pick up ordering application tasks and is enabled to support the completion of those tasks.[6]

[6] Bold brackets added to delineate claim limitations.

Even a cursory review confirms that the asserted ’130 patent claims are directed to desired functional results, not any concrete inventive new device or technology. The claims are structured similarly to the claims of the related ’651 patent held invalid in *Olo*.

For example, invalidated claim 1 of the ’651 patent recited a “rule capable intelligent automated assistants (IAA) system” including at least one “*web server*,” at least one “*at least one IAA mobile application and user interface*”, a “*master database*” of hospitality related data and parameters, at least one “*application software based communications control module (CCM)*,” at least one “*external API*,” and desired functions such as “*maintaining consistency with the master database*,” and “*communicating via free format messaging and at least one interface with fixed format messaging communications with web browsers for communicating bi-directionally with two or more different remote wireless handheld computing device*.” (Ex. 3, ’651 Patent at Col. 21:45-22:29.) Here, claim 1 of the ’130 patent recites similar elements as well as “instructions enabled to intelligently choose and apply multiple and different modes of contact and/or different communications protocols,” all in high-level, result-oriented terms. (Dkt. 1-1 at Col. 22:34-39).

Just as the five predecessor patents, nothing in these claims provides any concrete new technology. Instead, the claims can be distilled down to purely functional, result-oriented terms, where the desired results are to be achieved, somehow, through some unspecified programming.

**2. The Court Should Dismiss The Complaint Because The Asserted Patent Claims Patent Ineligible Subject Matter**

Two district court decisions, one PTAB decision, and three subsequent Federal Circuit affirmances confirm that, like the five other related patents, the ’130 patent asserted in this case is invalid.

**a. The Asserted Patent’s Invalidity Is Confirmed By Two Prior District Court Determinations And Three Federal Circuit Affirmances**

As referenced above, the ’130 patent is merely another patent in a large family of related

patents that share a common specification, which are generally directed to the abstract idea of generating and communicating hospitality-related information. This amounts to nothing more than automating an age-old business practice. Critically, the ’130 patent and the ’651 patent share the *same* specification that includes the additional Figure 10, which was not present in the ’077, ’733, ’325, or ’850 patents’ specification. Ameranth readily admits the ’130 and ’651 patents’ specification “modified the primary prior systemic architecture [in] Figure 9 into Figure 10” and included a short “addition to the prior specification” to focus on the new Figure 10. (FAC ¶ 35.)

This new material, however, was already considered by the Delaware court and was deemed insufficient to transform the ’651 patent into a patent eligible application of the abstract idea itself. Specifically, Judge Stark recognized:

> Ameranth tries but fails to distinguish the earlier Federal Circuit cases, *Apple* and *Domino's*[,] by pointing to the addition[s] in the specification. Specifically, ***the addition of Figure 10 which itself points to communication conversion***, and by further pointing to text relating to Figure 10 which has been added to the specification, such as in column 18. ***But Figure 10 [and] the new text of the specification about it do not in my view change the Section 101 outcome***.

*Natera, Inc. v. ArcherDX, Inc.*, No. 20-125-LPS, 2020 WL 6043929, at *8 (D. Del. Oct. 13, 2020) (emphasis added). Notably, the Delaware court’s decision was subsequently affirmed by the Federal Circuit. *Ameranth, Inc. v. Olo Inc.*, No. 2021-1211, 2021 WL 4699180 (Fed. Cir. Oct. 8, 2021). Thus, the Federal Circuit agreed that Figure 10, and the newly added language, did not meaningfully change the paradigm.

For the same reasons in *Apple*, *Domino's*, and especially in *Olo*, and further expressed below, the ’130 patent should be similarly found invalid because the claims fail to capture patent eligible subject matter.

**b. The Asserted Patent Fails The *Alice* Framework**

**i. *Alice* Step One: The '130 Patent Is Directed To An Abstract Idea**

At step one, courts look to whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). "In essence, *Alice* step one prompts courts to ask, what are the claims generally trying to achieve?" *Intellectual Ventures I LLC v. Erie Indem. Co.*, 200 F. Supp. 3d 565, 569 (W.D. Pa. 2016).

In this case, the claims of the '130 patent, like the claims of the '651 patent invalidated in *Olo*, are directed to the abstract idea of communicating hospitality-related information using a system that is capable of synchronous communications and messaging. Indeed, both patents claim a web server that communicates hospitality-related information, including food/drink ordering, to and from multiple client devices via multiple messaging formats. (*Compare* Dkt. 1-1 at Claim 1 with '651 Patent, Ex. 3, at Claims 1 and 6.) This is further confirmed by their shared specification, which "identifies the provision of an improved information management synchronous communication system and method as a principle object of the invention." *Natera*, 2020 WL 6043929, at *7; Dkt. 1-1 at Col. 2:61-63. Thus, even Ameranth concedes that "Claim 1 of the '130 patent includes a preamble that is limiting and that defines the 'said web server' as to which it is directed as 'an intelligent web server computer with multi-modes of contact, multi communications protocols, multi-user and parallel operational capabilities.'" (FAC ¶ 44.)

Moreover, just as in *Olo*, the '130 patent claims are directed "provide only results[-]focused and functional language without providing any specifics as to how to carry out the desired goal." *Natera*, 2020 WL 6043929, at *7; *see also Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) ("[E]ssentially result-focused" and functional language "has been a

frequent feature of claims held ineligible under § 101"). The '130 claims—like the invalid '651 claims—purport to recite generic components and various functions to be performed with software, but they do not describe any specific programming steps. *Id*. Thus, the same reasoning as in *Olo* applies here: "[t]hese claims are not really directed to an improvement to computer functionality but instead automate pen-and-paper traditional business practices, specifically the practices of ordering and making reservations. . . . . This is not a computer only problem." *Id.* at *8; *see also In re TLI Comms. LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) ("We contrasted claims 'directed to an improvement in the functioning of a computer' with claims 'simply adding conventional computer components to well-known business practices,' or claims reciting 'use of an abstract mathematical formula on any general purpose computer,' or 'a purely conventional computer implementation of a mathematical formula,' or 'generalized steps to be performed on a computer using conventional computer activity.'").

As such, the claims of the '130 patent are directed to an abstract idea.

**ii. *Alice* Step Two: The '130 Patent Does Not Recite Any Inventive Concepts**

At Step Two, the Court must search the claims for an "'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217–218. The inventive concept, however, must provide "significantly more" than the abstract idea itself. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1289–90 (Fed. Cir. 2018). Generic technological elements, like those found in the '130 patent, that are "well-understood, routine, conventional," or "purely functional" cannot supply an inventive concept sufficient to confer patent-eligibility. *Alice*, 573 U.S. at 226; *TLI Comms.*, 823 F.3d at 613 ("It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an

otherwise abstract idea.").

Here, the asserted claims recites only well-understood, conventional, and routine technical components, including a "web server" computer, a "master database," a "hospitality food/drink ordering software application," "communications control software," and various "APIs" (*i.e.*, application program interfaces), and functional ideas, including enabling the web server to "intelligently choose and apply multiple and different modes of contact and/or different communications protocols" and "improving efficiency while eliminating the necessity of continually querying or checking every tree branch in the master menu tree file structure" of the master database. (FAC ¶ 45). Just as in *Olo*, none of these features, even as an ordered combination, add an inventive concept to the abstract idea. The '130 patent specification readily admits, the claimed system could be implemented on any "typical hardware elements" and the "discrete programming steps [for the software applications for performing the functions falling within the described invention] are commonly known." (Dkt. 1-1 at Col. 6:57-7:18, Col. 13:7-12). Thus, Judge Stark's reasoning in *Olo* is equally applicable in this case:

> There is simply here no basis to conclude that the practice of the abstract idea ... with what the patent repeatedly describes as "typical" – and that's a quote, "typical" computer hardware [–] using "well-known" software programming in the order that the claim sets out, an order which is logical and expected ... [is] anything other than ... conventional, well understood, and routine.

*Natera*, 2020 WL 6043929, at *9. As the Federal Circuit reiterated in *Apple*, "[i]t is not enough to point to conventional applications and say 'do it on a computer.'" *Apple*, 842 F.3d at 1243 (citing *Alice*, 573 U.S. at 221). That is precisely what the related claims here seek to do.

Moreover, as to the claimed functional ideas, it makes no difference whether, as Ameranth alleges, "'eliminating the necessity of continually querying or checking' limitation claims a system that simultaneously achieves improved consistency and availability in a distributed database." (FAC ¶ 46.) The '130 patent does not describe or claim any inventive or new technology to achieve

this desired end-result. "Simply replacing the human operator with a conventional machine is not an inventive concept and is not sufficient to transform the claims into patent-eligible subject matter." *Ficep Corp. v. Peddinghaus Corp.*, 587 F. Supp. 3d 115, 126 (D. Del. 2022). Indeed, Ameranth describes such functionality as merely involving "messaging, text to voice, and/or two-way interactivity," "communication via landline telephones, cellular telephones, and/or wireless devices" and a computer "acting as web server." (FAC ¶¶ 47-48). Further, the mere concept of intelligently choosing and applying multiple and different modes of contact and/or different communications protocols (FAC ¶ 46) amounts to no more than an expression of the abstract idea itself and cannot provide an inventive concept. "This is because 'a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.'" *Domino's*, 792 F. App'x at 787 (citing *BSG Tech*, 899 F.3d at 1290). That is also the case here.

Ameranth's reliance on Dr. Goodrich's litigation induced declaration is equally misplaced. Ameranth cites to Dr. Goodrich's declaration to show that the claims recited a "non-routine and unconventional combination" of elements that achieves "consistency and availability in a distributed database" and "provides partition-tolerance through its multi-modes of contact, multi-communications protocols, multi-user and parallel operational capabilities." FAC ¶¶ 64-65. However, as Dr. Goodrich readily admits, the '130 patent "is not tied to a specific computer programming language" and "the '130 patent provides ***pseudocode for an exemplary algorithm*** for building a menu file structure." (Id. ¶¶ 68, 70 (emphasis added).) Not only are Dr. Goodrich's conclusory allegations regarding the unconventional nature of the claimed elements contradicted by the patent itself, but once again, such results-focused and functional language amounting to nothing more than the abstract idea itself cannot carry the day. *See Domino's*, 792 F. App'x at 787

(citing *BSG Tech*, 899 F.3d at 1290); *see also Simio, LLC v. FlexSim Software Prod.*, Inc., 983 F.3d 1353, 1364 (Fed. Cir. 2020) ("a claim for a new abstract idea is still an abstract idea).

Therefore, the asserted claims of the '130 are directed to an abstract idea and fail to disclose an inventive concept. As a result, the asserted claims are patent ineligible and the Court should dismiss this complaint with prejudice for failure to state a claim.

**C. Ameranth's Willfulness Claim Must be Dismissed Because DoorDash Did Not Have Pre-Suit Knowledge of the Patent or Alleged Infringement**

**1. Courts are Split on Whether Pre-Suit Knowledge is Necessary to Plead Willful Infringement**

Courts are divided over whether a defendant must have pre-suit knowledge to sustain a claim of willful infringement. *See ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 249–50 n.1 (D. Del. 2021) (collecting cases and discussing the disagreements between district courts across the country and within the District of Delaware); *Beteiro, LLC v. BetMGM, LLC*, 626 F. Supp. 3d 789, 803 (D.N.J. 2022) ("Plaintiff's willfulness allegations would remain insufficient because they are admittedly premised on the notice provided by service of the Complaint alone.") Indeed, even within individual Circuits, including this one, cases come out on both sides. *Compare VLSI Tech. LLC v. Intel Corp.*, CV No. 18-966-CFC, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) (dismissing willfulness-based enhanced damages claim where the plaintiff had alleged that the defendant gained "knowledge of the [patent] at least since the filing of this complaint") *with MG Freesites Ltd. v. ScorpCast LLC*, No. 20-1012-MFK, 2023 WL 346301, at *10 (D. Del. Jan. 20, 2023) ("[T]he Court concludes that pre-suit knowledge is not required to state a claim for post-suit indirect infringement or willfulness."). Neither the Federal Circuit nor Supreme Court have provided guidance directly on point. *ZapFraud*, 528 F. Supp. 3d at 250.

**2. The Better Approach is to Find that Pre-Suit Knowledge of a Patent and Alleged Infringement is a Prerequisite to a Claim of Willful Infringement**

Several courts in this Circuit and elsewhere have found that claims based on post-filing conduct, particularly, the filing of a complaint to be insufficient to plead the knowledge requirement for willfulness. *ZapFraud*, 528 F. Supp. 3d at 249–50. The reasoning for such holdings are many and persuasive.

First, permitting claims based on post-filing conduct would lead to illogical results because plaintiffs would have carte blanche to allege willfulness in every patent case—"if all that is required is the filing of a complaint and a plausible allegation of infringement, then every case would be a willful infringement case." *Wrinkl, Inc. v. Facebook, Inc.*, No. 20-cv-1345-RGA, 2021 WL 4477022, at *7 (D. Del. Sept. 30, 2021). In other words, permitting the knowledge requirement for a willfulness claim to be accomplished based on post-filing conduct would be contrary to "[t]he purpose of a complaint [which] is to obtain relief from an existing claim and *not to create a claim*." *Helios Streaming, LLC v. Vudu, Inc.*, 2020 WL 3167641, at *2 n.1 (D. Del. June 15, 2020) (emphasis added). Second, such a framework would lead to the ill-advised expectation that every patent defendant 'cease all allegedly infringing conduct once a complaint is filed' to force them to avoid enhanced damages for willful infringement." *Ravgen, Inc. v. Quest Diagnostics Inc.*, No. 2:21-cv-09011-RGK-GJS, 2022 WL 2047613, at *2–3 (C.D. Cal. Jan. 18, 2022); *M&C Innovations, LLC v. Igloo Prods. Corp.*, 2018 WL 4620713, at *5 (S. D. Tex. July 31, 2018) ("This post-suit fact pattern characterizes every infringement action except for those in which an alleged infringer immediately ceases production following service of the complaint."). Finally, allowing the complaint to serve as notice would circumvent the worthwhile practice to send a cease-and-desist letter before suit. *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 646 (N.D. Cal. 2022), *leave to appeal denied*, No. 2022-134, 2022 WL 1486359 (Fed. Cir. May 11, 2022). Indeed,

recognizing the efficacy of cease-and-desist letters, some courts have not permitted the complaint itself to serve as notice. *Id*.

The better approach adopted by courts in this Circuit and throughout the country is to hold that pre-suit knowledge of a patent and alleged infringement is a prerequisite to a claim of willful infringement. *See, e.g.*, *Wrinkl, Inc.*, 2021 WL 4477022, at *7 ("while a plaintiff could file an amended complaint alleging willfulness, when there is no pre-suit knowledge, it is not sufficient merely to allege the defendant has knowledge since the filing of the original complaint and has not ceased doing whatever the infringing behavior is alleged to be"); *Cooper Lighting, LLC v. Cordelia Lighting, Inc.*, No. 1:16-CV-2669-MHC, 2017 WL 3469535, at *3 (N.D. Ga. Apr. 6, 2017) (finding that willfulness claims can be based only on pre-filing conduct); *Adidas Am., Inc. v. Skechers USA, Inc*., No. 3:16-CV-1400-SI, 2017 WL 2543811, at *4 (D. Or. June 12, 2017) (finding no basis for a post-filing willfulness claim if the plaintiff fails to plausibly allege pre-filing knowledge of the patent). Under such circumstances, "an amended complaint cannot rely upon the original complaint as a basis to allege knowledge for a willful infringement claim." *iFIT Inc. v. Peloton Interactive, Inc.*, No. CV 21-507, 2022 WL 609605, at *2 (D. Del. Jan. 28, 2022).

**3. Ameranth Fails to Plead Pre-Suit Knowledge of the '130 Patent**

Here, Ameranth does not allege any facts that would plausibly suggest that DoorDash had pre-suit knowledge of the '130 patent let alone pre-suit knowledge that its acts infringed the '130 patent to adequately plead willful infringement as the basis for its request for enhanced damages under Section 284. Rather, the crux of Ameranth's allegations regarding DoorDash's knowledge of the '130 patent are that "Defendant has been on notice of the '130 [P]atent since, at the latest, the date it was served the Complaint." FAC ¶ 93. Thus, the sole factual allegation supporting DoorDash's knowledge of the '130 patent is Ameranth's filing of the original Complaint. Because knowledge of the patent is a prerequisite to knowing infringement of that patent, Ameranth has

not plausibly alleged that DoorDash committed knowing infringement of the ’130 patent prior to the filing of this suit. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) (“Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages.”). The willfulness claim should therefore be dismissed.

## V. CONCLUSION

In view of the above, DoorDash respectfully requests that the Court dismiss this case for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), or alternatively, transfer this case pursuant to 28 U.S.C. § 1406(a) to the District of Delaware, where DoorDash resides and venue is indisputably proper. Even if the Court determines that venue is proper here, the Court should still dismiss the case pursuant to Fed. R. Civ. P. 12(b)(6) because the asserted ’130 patent claims patent ineligible subject matter. Lastly, the Court should dismiss the willful infringement claims because DoorDash lacks the requisite knowledge component.

Dated: June 29, 2023

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*/s/ Richard D. Kalson*
Richard D. Kalson
1330 Avenue of Americas, 23rd Floor
New York, NY 10019
Telephone: (614) 223-9380
Facsimile: (412) 417-4209

*Attorneys for Defendant*
*DoorDash, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Pennsylvania by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Richard D. Kalson*
Richard D. Kalson